

# THE ATTORNEY GENERAL
## OF TEXAS

JIM MATTOX
ATTORNEY GENERAL

July 25, 1990

Mr. Charles D. Travis
Executive Director
Texas Parks and Wildlife
  Department
4200 Smith School Road
Austin, Texas   78744

Opinion No.  JM-1190

Re:  Exemption of lessees of
the General Land Office from
the permitting requirements
for removal of sand,  shell,
gravel, or marl within state
tidewater limits   (RQ-1910)

Dear Mr. Travis:

Parks and Wildlife Code  sections 86.001 and  86.002(a)
make provisions with respect to  the authority of the  Parks
and Wildlife Commission  to manage and  control marl,  sand,
gravel, shell, and mudshell.  Section 86.001 provides:

> The commission shall manage, control,  and
> protect marl  and  sand of  commercial  value
> and all gravel, shell,  and mudshell  located
> within the  tidewater  limits of  the  state,
> and on  islands  within  those  limits,   and
> within the freshwater areas of the state  not
> embraced by a survey of private land, and  on
> islands within those areas.

Section 86.002(a) provides:

> No person may disturb or take marl,  sand,
> gravel,  shell,   or   mudshell   under   the
> management and protection  of the  commission
> or operate in  or disturb any  oyster bed  or
> fishing water for any purpose <u>other than that
> necessary  or  incidental  to  navigation  or
> dredging under  state  or  federal  authority</u>
> without first having  acquired from the  com-
> mission a permit authorizing the activity.
> (Emphasis added.)

<u>See also</u> Parks & Wild.  Code § 11.001(1)  (defining  'commis-
sion' as used in sections 86.001 and 86.002 as the Parks and
Wildlife Commission).

You ask whether  a certain holder  of an easement  from the School Land  Board must obtain  from the commission  the permit required  by section  86.002(a) in  order to  conduct dredging operations  pursuant  to  its  easement.  A  brief submitted by the General Land Office in connection with your request describes the situation  that prompted your  request as follows:

> On May 9,  1989, the School  Land Board  pursuant to  Chapter  33 of  the  Texas  Natural Resources Code  granted  to Lone  Star  Aquaculture, Inc.  a  coastal  easement  for  the installation on  submerged  permanent  school fund land in Matagorda Bay of a buried  water intake pipe to supply  seawater to an  upland aquaculture facility.  Lone  Star  owns  the leasehold estate  in the  adjoining  littoral property, which is  permanent school fund land leased to Lone Star  under Chapter 51 of  the Texas Natural Resources Code.  As an incident of installation of the pipe as authorized  in the easement, it was necessary for Lone  Star to dredge the bay  bottom.  Lone Star is  not removing any sand, shell, gravel or marl  for sale or  for any  other  purpose and  is  replacing the sand, shell, gravel and marl over the pipeline once constructed.
>
> . . . .
>
> The School Land  Board and  the General  Land Office contend . . . that since the  dredging was conducted pursuant to state authority  (a School Land  Board coastal  easement  granted pursuant  to Chapter  33 of  the  Natural Resources  Code),  the  easement  holder  is exempt, pursuant to Section 86.002(a) of  the Parks  and  Wildlife Code,  from having to obtain a Chapter  86 sand,  gravel, and  marl permit.

We discern the focus of your inquiry to be whether  the disturbance of  marl,  sand,  gravel,  shell,  and  mudshell necessary or  incidental to  dredging operations  under  the easement in question  would be "necessary  or incidental  to navigation or  dredging under  state or  federal  authority" within the meaning of section 86.002(a) and thus exempt from the section's requirement  of a permit  from the Parks  and Wildlife Commission.

The School Land  Board is  an executive  agency of  the state.  Nat.  Res.  Code  § 33.011.  It  is composed  of  the

commissioner of the General Land Office and appointees of the governor and the attorney general, and is assisted in the performance of its duties by the staff of the General Land Office. Id. §§ 32.012, 33.012, 33.013, 33.051. Section 33.111(a) of the Natural Resources Code provides:

> The board may grant easement rights to the owner of adjacent littoral property authorizing the placement or location of a structure on coastal public land for purposes connected with the ownership of littoral property.

The brief submitted by the General Land Office indicates that the easement holder in question is an "owner of adjacent littoral property" within the meaning of section 33.111 by virtue of a leasehold interest acquired from the General Land Office under chapter 51 of the Natural Resources Code.

It would also appear that the granting of the easement from the School Land Board for "dredging on submerged state land for the installation of a water intake pipe to supply water to an aquaculture facility," as recited in the copy of the easement document you attached to your request, is within the School Land Board's authority under section 33.111 for granting easements for the "location of a structure on coastal public land for purposes connected with the ownership of littoral property." (Emphasis added.) "Structure" as used in chapter 33 is defined in section 33.004(10) of the Natural Resources Code to mean "any structure, work, or improvement constructed on, affixed to, or worked on coastal public land, including . . . excavations."

We conclude in response to the question you present that the holder of such easement is not required under Parks and Wildlife Code section 86.002(a) to obtain a permit from the Parks and Wildlife Commission for its disturbances to, or taking of, marl, sand, gravel, shell, or mudshell necessary or incidental to its dredging operations for installation of the water intake pipe pursuant to its easement for said operations granted by the School Land Board.

The Texas Supreme Court in Amdel Pipeline v. State of Texas, 541 S.W.2d 821 (Tex. 1976) considered the provisions of section 86.002(a) in connection with whether a holder of a permit from the United States Army Corps of Engineers for dredging for navigational purposes in the Neches River Channel, a federal navigation project, was required to obtain a permit from the Parks and Wildlife Commission. The court noted that the provisions of section 86.002(a) had not changed substantially since their original enactment in

1911.   541 S.W.2d at 824, 825; see Acts 1911, 32d Leg.,   ch. 68.[1]

The court in Amdel held that the dredging operations by the company, performed pursuant to its permit from the  Army Corps of Engineers,  were ones "necessary  or incidental  to navigation under . . . federal authority" within the meaning of section  86.002(a) and  thus  exempt from  the  section's permit requirement. We think  that a court would  similarly find that  disturbances of  marl, sand,  gravel, shell,  and mudshell by the easement holder in question here are  exempt from said permit requirement if in fact the disturbances are necessary or incidental to its dredging operations  pursuant to its easement from the School Land Board.

The Amdel court recognized,  and the parties appear  to have agreed,  that  the  company's  operations  were  "under federal authority"  within the meaning of section 86.002(a). See Amdel,  at  826.  In  the  present case,  we  think  the easement holder's operations, pursuant to its easement  from the School  Land Board,  would be  found by  a court  to  be "under state authority" within the meaning of that section.

The Corps of Engineers permittee in Amdel held a permit for dredging for navigational purposes.  We do not think the fact that the School  Land Board easement holder's  easement is for dredging for  non-navigational purposes takes it  out of the section  86.002(a) exception.  The  exception is  for "navigation or dredging under  federal or state  authority." Webster's defines  "dredge" to  mean "dig,  gather, or  pull out"  and  "to  deepen (as  a  waterway  with  a   dredging

_____

1.  The Amdel court traced the section 86.002(a) permit requirement  exception  for  navigation  or  dredging  under federal or state authority to a penal provision of the  1911 act.  The court  stated, however, that  it did not  construe the provision "to  have the  isolated effect  of telling  us whom [sic]  shall suffer  penal sanctions."   541 S.W.2d  at 826.

> The caption of the  1911 Act refers to  'penalties for the violation of this Act' -- indicating  that there is no violation of any part of the Act where one, who removes  marl and  sand, does  so in  the course of operations that  are necessary or  inci- dent  to navigation or   dredging under state or federal authority.

Id.

machine)." Webster's Ninth New Collegiate Dictionary 382 (1985). The ordinary meaning of dredging does not appear to be limited to dredging for navigational purposes. We do not think the legislature would have used the disjunctive "or" in the phrase "navigation or dredging" had it intended the exception to apply only to operations for navigational purposes.

Our conclusion here is supported by Attorney General Opinion M-84 (1967), cited with approval in Amdel, at 826. In responding to the question whether the Parks and Wildlife Department had "authority to regulate or limit disturbances in submerged land areas leased by the School Land Board to individuals," the opinion stated that the Parks and Wildlife Department had authority to manage, control, and protect all marl, sand, gravel, shell, and mudshell within the areas defined by V.T.C.S. article 4051 (now section 86.001 of the Parks and Wildlife Code), with the exception of

> the marl, sand, [etc.], . . . that are dis-
> turbed for an authorized navigational pur-
> pose . . . or being disturbed by a lessee of
> the School Land Board in carrying out the
> purpose of the lease (whether for oil or gas
> production or other commercial or industrial
> use) and which disturbance of the marl, etc.
> is incidental to such purposes and reasonably
> necessary in carrying out such purposes.[2]

Attorney General Opinion M-84, at 6. We think the fact that the operations here are performed pursuant to an easement from the School Land Board rather than a lease, as in Attorney General Opinion M-84, does not make the operations any the less "under state authority" within the meaning of section 86.002(a). See also Attorney General Opinions C-90 (1963) (submerged land leased for oil and gas development); WW-150 (1957) (disturbances on submerged land patented to a navigation district).

---

2. This conclusion of Attorney General Opinion M-84 was based on a reading of the provisions then found in article 976 of the Penal Code. Those provisions were incorporated without substantive change in the Parks and Wildlife Code in 1975, as section 86.002. Acts 1975, 64th Leg., ch. 545, § 1, at 1405. In 1985, specification as to the penalties for violating the provisions of section 86.002 were taken out of section 86.002 and placed in section 86.020. Acts 1985, 69th Leg., ch. 267, art. 3, § 107, at 1294.

You point in your brief to the provisions of section 33.005(a) of the Natural Resources Code, which provides:

> This subchapter does not repeal the following provisions of the Parks and Wildlife Code:   Chapters 83 and 86, Subchapter A of Chapter 46, Subchapter A of Chapter 76, Subchapter D of Chapter 76, Subchapter B of Chapter 81, Subchapter G of Chapter 82, Subchapter C of Chapter 216, or Sections 66.101, 66.107, 66.112 through 66.118, 66.205, 76.031 through 76.036, 78.001 through 78.003, 81.002, 136.047, 184.024, 201.015, or 335.025.

Apart from the fact that the provisions of section 33.111 of the Natural Resources Code authorizing the School Land Board to grant easement rights in coastal lands appear in subchapter D of chapter 33 while section 33.005(a) refers to subchapter A as effecting no repeal of, _inter alia_, chapter 86 of the Parks and Wildlife Code, we also note that our construction here of section 33.111 of the Natural Resources Code, with those of section 86.002(a) of the Parks and Wildlife Code, works no "repeal" of the latter provisions. Our construction rather gives effect to the provision of section 86.002(a) that "navigation or dredging under federal or state authority" is excepted from that section's permit requirement.

You also argue in your brief that finding the easement holder's operations here to fall within the section 86.002(a) exception would "allow the exception to swallow the rule." You say that virtually all of the activities subject to regulation under chapter 86 currently require a permit from the United States Army Corps of Engineers under section 404 of the Clean Water Act, 33 U.S.C. § 1344. We caution that we do not address here whether holders of section 404 permits or other authorization permits would fall within the section 86.002(a) exception for "navigation or dredging under federal or state authority," but confine our opinion here to the facts presented. We note, however, that prior to the adoption of the predecessor provisions of section 86.002 in 1911, the public was free generally to disturb or remove bottom materials from coastal public land without supervision. _See_ _Goar v. City of Rosenberg_, 115 S.W. 653 (Tex. Civ. App. 1909, no writ); Attorney General Opinion WW-151 (1957). It is possible that since 1911 federal and state regulation over coastal lands has grown to the point where anyone removing or disturbing such bottom materials must have obtained a federal or state authorization, therefore potentially bringing them within the section 86.002(a) exception. However, whether the exception to the

section 86.002(a) permit requirement for "navigation or dredging under federal or state authority" now needs to be redrawn in light of such developments is a matter for the legislature.

## S U M M A R Y

The holder of an easement from the School Land Board for dredging for installation of a water intake pipe on submerged state land is not required, under Parks and Wildlife Code section 86.002(a), to obtain a permit from the Parks and Wildlife Commission for disturbances of marl, sand, gravel, shell, or mudshell necessary or incidental to its dredging operations pursuant to such easement.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by William Walker
Assistant Attorney General